465 So.2d 1285 (1985)
Willard E. PARSONS and Patricia G. Parsons, Appellants,
v.
MOTOR HOMES OF AMERICA, INC., Appellee.
No. AY-190.
District Court of Appeal of Florida, First District.
March 7, 1985.
*1287 William H. Folsom, Jr., Jacksonville, for appellants.
Harris Brown of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellee.
JOANOS, Judge.
This is an appeal from a final judgment denying appellants' (hereinafter "the Parsons") claim for revocation of acceptance of a Winnebago motor home purchased from Motor Homes of America, Inc. (hereinafter "Motor Homes"). The Parsons have raised five points for review: (1) whether the trial court erred in requiring an election of remedies at pre-trial conference; (2) whether the trial court erred in refusing to admit evidence on the Parsons' claim for revocation against Motor Homes because of an expressed inability to distinguish such evidence from the claim against Winnebago Industries, Inc. (co-defendant in the lower tribunal), and in admitting but not separately considering evidence not germane to the Parsons' claim against Motor Homes; (3) whether the trial court erred in failing to recuse himself; (4) whether the trial court erred in ruling the warranty notice provision was a limitation of remedy provision pursuant to Section 672.719, Florida Statutes; and (5) whether the trial court erred in finding there was not a showing of substantial impairment of value pursuant to Section 672.608, Florida Statutes. We affirm in part, reverse in part, and remand with directions.
In their suit against Motor Homes, the Parsons claimed damages for breach of implied warranty of merchantability and deceptive trade practice violations, attorney's fees, costs, and revocation of acceptance. The Parsons sued Winnebago Industries, Inc., alleging breach of implied warranty of merchantability, breach of manufacturer's limited warranty, violation of the Magnuson-Moss Federal Warranty Act, and violation of Section 320.835, Florida Statutes (1981).
The Parsons took delivery of the motor home on December 28, 1981. The purchase price was $25,680. At the time of delivery the motor home showed mileage of 2,820 miles. The Parsons received a written limited warranty in a package of other materials concerning the motor home, and they purchased an additional extended warranty from Motor Homes, Inc. which covered the unit for up to five years or 50,000 miles.
Immediately upon taking delivery of the motor home, the Parsons departed with their three children for a vacation in the North Georgia mountains. During their first trip in the motor home the Parsons experienced problems with (1) water leaks around the windshield and over the cooking area, (2) malfunctioning windshield wipers, (3) non-functioning cruise control, (4) water pump failure, and (5) a broken cabinet latch. Upon their return from vacation, the Parsons took the unit back to Motor Homes for repairs.
On their second trip in the motor home the Parsons noted malfunctions in the radio, the key switch, the furnace, and the electric cord switch. In addition, the water leaks continued and the metal on the side of the motor home was delaminating. The unit was again returned to Motor Homes for repairs.
The record reflects that the Parsons continued to experience repeat or similar problems on each trip they made in the motor home. The pattern which evolved was a family trip marred by problems with the motor home, then a return of the unit to the dealer for repairs. Each return to the *1288 dealer encompassed periods when the unit sat on the lot as the dealer attempted to reach Winnebago's representative for repair authorization. On September 23, 1982, nine months after purchase, the Parsons revoked their acceptance of the motor home. A month later the Parsons filed suit against Motor Homes and Winnebago Industries, Inc.
After receipt of the Parsons' claim, Motor Homes filed a motion to require the Parsons to make an election of remedies at pre-trial conference. Co-defendant Winnebago Industries, Inc., filed a motion to strike the Parsons' demand for jury trial, and Motor Homes filed a cross-claim against Winnebago alleging breach of warranty and seeking indemnity and contribution. The trial court granted Motor Homes's motion to require election of remedies at pre-trial conference, and ruled that Winnebago's motion to strike demand for jury trial would be granted if the Parsons elected revocation of acceptance as the remedy they intended to pursue.
The Parsons filed a motion seeking recusal and transfer of the case, on the ground that Mr. Parsons had announced his candidacy for the position occupied by the trial judge assigned to the case. The motion for recusal was denied.
The Parsons elected the remedy of revocation of acceptance, and non-jury trial ensued. At trial the Parsons testified that they had returned the motor home to the dealer for repairs ten or twelve times between the December 28, 1981, date of purchase and their revocation of acceptance on September 23, 1982. A witness who had been in the business of motor home repairs for thirteen years testified that in his opinion the number of repair orders that had been written on the Parsons' Winnebago was excessive. The representative for Winnebago Industries, Inc. testified that he first had knowledge of the Parsons' complaints about the Winnebago on January 19, 1982. In his inspection of the motor home in August 1982 the factory representative observed that at that time the ceiling needed repair, the carpet needed cleaning, a strip on the ceiling over a glideaway bunk needed repair, cushions and shades had been replaced (in accordance with prior orders), and the ceiling panel needed to be replaced. He directed Motor Homes to replace the ceiling panel, but this was not done.
When counsel for Winnebago Industries introduced documents concerning parts ordered for the motor home, counsel for the Parsons objected because he had previously sought, unsuccessfully, to have the documents produced at deposition. Counsel for the Parsons indicated he would have no objection to the documents' admission so long as they pertained only to the dealer's case against Winnebago and did not concern the Parsons' case.[1] Following counsel's objection and explanation, the trial court stated:
The Court notes the objection by counsel for the plaintiff and rules that they will be received if offered and properly identified. That is premature to make a ruling on that yet. But the Court should advise Mr. Folsom that once the matter comes in, there is no way I can instruct myself any more than I could instruct a jury, now you may consider this evidence for this purpose but you must completely clear your minds with reference to some other information that it may provide you as a trier of the facts. You are asking too much of six people and you are asking too much of the Judge to be able to do that. If it is received in evidence, it will be received for any probative value it may have on any issues before the Court.
At a later point in the proceeding, the Parsons' counsel attempted to read a portion of a deposition of the general manager of Motor Homes. Counsel for Motor Homes stipulated that he had no objection to introduction of this evidence, but counsel *1289 for Winnebago objected because the court had already noted that "it is impossible for the trier of fact to take bits of information and say I won't consider this on one case but I will consider it on the other one." The court ruled that neither counsel for the Parsons or counsel for Motor Homes could stipulate away a right that belonged to Winnebago. The Parsons' counsel then proferred the deposition and the court noted the proffer for the record, but stated that the court would not consider the proffer in arriving at a determination of the case.
After trial, the trial court entered judgment for Motor Homes, finding that the warranty provision was an exclusive and a reasonable and adequate remedy, and the parties had contracted for that remedy. The court further found there had been no showing of a substantial impairment of use or value, the defects complained of were curable and were in fact substantially cured, and the dealer and manufacturer had complied with the contract in making those repairs. We affirm in part and reverse in part.
As first point for review the Parsons allege the trial court erred in requiring them to make an election of remedies at the pre-trial conference. The Comment to U.C.C. § 2-608 (Section 672.608, Florida Statutes) explains the change in a buyer's remedies effected by adoption of the Uniform Commercial Code. The purpose of these changes is to make clear that "the buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him." We agree that a plaintiff should not have to forego the right to a lesser remedy in order to seek the greater remedy of revocation. On this point we are in accord with the view taken by the Fifth District in Monco of Orlando, Inc. v. ITT Industrial Credit Corp., 458 So.2d 332 (Fla. 5th DCA 1984). Although Monco is not a Code case, the court's reasoning with regard to election of remedies is applicable here. In Monco the court held "an election between inconsistent remedies need only occur before judgment is entered." (emphasis supplied). The Fifth District acknowledged that its Monco decision and other Fifth District decisions on point are in conflict with Deemer v. Hallett Pontiac, Inc., 288 So.2d 526 (Fla. 3rd DCA), cert. denied, 298 So.2d 416 (Fla. 1974), relied upon by Motor Homes. Conflict notwithstanding, the Monco court went on to say, "[w]e see no policy consideration in the requirement that multiple actions should be required to prove one remedy, if a plaintiff is entitled to one of several inconsistent remedies." In Monco the Fifth District expressed the view that its holding was in agreement with this court's position in Cordell v. World Ins. Co., 358 So.2d 223 (Fla. 1st DCA 1978), although acknowledging that the time at which a party must make an election of remedies was not expressly decided in Cordell.[2]
The Parsons' second point for review involves the trial court's statement of an inability to admit and to consider separately evidence as it related to the Parsons' claim for revocation and as it related to Motor Homes's cross-claim against Winnebago Industries, Inc. for breach of warranty, indemnity and contribution. The record reflects that the trial court refused to admit evidence tendered by the Parsons in support of their contention that Motor Homes continued its efforts to repair water leaks in the vehicle up until November 19, 1982  well after the September 23, 1982 revocation of acceptance. Yet the trial court did admit, over objection by counsel for the Parsons, post-revocation evidence offered on behalf of Winnebago Industries, Inc. in its defense to the cross-claim of Motor Homes. The Parsons' evidence, if admitted, would have countered Motor Homes's evidence offered in the form of repair orders in support of its contention that no repairs were attempted after May *1290 19, 1982. On the evidence admitted, the trial court deemed the defects complained of had been substantially cured prior to the Parsons' notice of revocation of acceptance.
The law is clear that evidence "admissible as to one party or for one purpose, but inadmissible as to another party or for another purpose," may be admitted so long as it is restricted to its proper scope. § 90.107, Fla. Stat. (1981).[3] See also: Fla. R.Civ.P. 1.450(b); Fla.Std.Jury Instr. (Civ.) 2.4. Therefore, the trial court erred in taking the position that once material "is received in evidence, it will be received for any probative value it may have on any issues before the court." (emphasis supplied). A trial court sitting as trier of fact must adhere to the same standard as that imposed upon a jury called upon to consider several distinct claims, i.e., to "consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately." Fla.Std.Jury Instr. (Civ.) 2.4. A trial court's error in the acceptance or rejection of evidence does not necessarily constitute harmful error. Only when it appears that "such errors injuriously affect the substantial rights of the complaining party" will a judgment be reversed. Prince et al. v. Aucilla River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931); Butler v. State, 94 Fla. 163, 113 So. 699 (1927).[4] Since we affirm that portion of the judgment which denied the Parsons' claim for revocation of acceptance, we find it unnecessary to decide whether the trial court's error in failing to consider separately the evidence as it related to each party's claim was in fact "harmful." Butler v. State, at 701.
As third point for review the Parsons allege error in the trial court's refusal to recuse himself and transfer the case. As support for their motion to recuse, the Parsons noted that Willard Parsons had announced his candidacy for the position held by the judge assigned to the case. The Parsons' motion was made with reference to Canon 2 of the Code of Judicial Conduct, which provides that "[a] judge should avoid impropriety and the appearance of impropriety in all his activities." The trial court held the motion was legally insufficient because it was not in compliance with Section 38.10, Florida Statutes and Florida Rule of Civil Procedure 1.432. The Parsons' motion to recuse did not allege the statutory grounds of "facts or reasons for the belief that any ... bias or prejudice exist[ed]", nor was it accompanied by a certificate of counsel that the motion to recuse and transfer was made in good faith. We find no reversible error in the trial court's refusal to recuse himself  for the motion was legally insufficient. We reach this conclusion although we suggest that under the circumstances the preferred course may have been for the Judge to have recused himself so as to totally dispel the notion of impropriety.
As fourth point for review, the Parsons allege error in the trial court's ruling that the warranty notice provision was a limitation of remedy under Section 672.719 Florida Statutes.[5] The trial court ruled that the *1291 "Warranty Notice" provision on the purchase contract was in compliance with the provisions of Section 672.719, with the result that the buyer's remedy was limited to a breach of warranty action against the manufacturer, Winnebago Industries, Inc. The disclaimer relied upon by Motor Homes provides:
Warranty Notice: Any and all warranties on the products sold hereby are those made by the manufacturer. The seller, hereby, expressly disclaims all warranties, either express or implied, including but not limited to, any implied warranty of merchantability or fitness for a particular purpose, and neither assumes, nor authorizes any other person to assume for it, any liability in connection with the sale of said products.
The manufacturer's warranty referred to in this warranty notice provision was limited to repair or replacement, at Winnebago's option, of defective parts.
Since there is no dispute in this case that the Warranty Notice was conspicuous, the first question to be decided is whether the remedy to be provided by the manufacturer Winnebago "is expressly agreed to be exclusive, in which case it is the sole remedy." § 672.719(1)(b), Fla. Stat. (1981). According to the Official Code Comment, U.C.C. § 2-719(1)(b) "creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed." It is clear that this warranty notice was intended to limit the buyer's remedies to those provided by the manufacturer, although the magic words "exclusive" or "sole" remedy are not employed here in the seller's disclaimer. Courts have presented conflicting views on whether clauses employing the language used in the warranty notice provision or similar language are effective to limit a remedy to that provided by a manufacturer's warranty unless the term "exclusive" is employed in the disclaimer. In White & Summers, Uniform Commercial Code § 12-9 (1980), the authors note that language of this nature has been held insufficient to constitute the sole remedy for the purposes of § 2-719(1)(b).[6] This position is consistent with the Uniform Commercial Code's preference for cumulative rather than exclusive remedies.
A Fifth Circuit Court of Appeals case, Council Brothers, Inc. v. Ray Burner Co., 473 F.2d 400 (5th Cir.1973) (which originated in the Northern District of Florida) addressed the issue presented here, i.e., whether a manufacturer's warranty which purportedly limits a buyer's remedies to repair or replacement of parts is effective as a limitation of remedy. The court found the provisions of Section 672.719, Florida Statutes (here reproduced at fn. 5) applicable, particularly with reference to Subsection (1)(b). The court held that "if the parties intend for a written warranty to prescribe an exclusive remedy, this must be clearly expressed." (emphasis in the original). Council Brothers, Inc., at 406. The warranty at issue in Council Brothers, just as the warranty notice provision at issue in this case, did not specify that the remedy or remedies provided were to be exclusive of any other remedy which appellant "might have under the various provisions of the UCC," and the court held that appellant was entitled to recover pursuant to other UCC remedies. Id.
In this case the warranty notice provision issued by Motor Homes to the Parsons does not specify that the remedies provided (by the manufacturer) are exclusive of any other remedy which might be available under *1292 the UCC. The UCC remedies include, (1) cancellation  Section 672.612; (2) "cover" and damages for non-delivery  Sections 672.712 and 672.713; (3) specific performance or replevin  Section 672.716; (4) rejection  Section 672.601; (5) revocation of acceptance  Section 672.608; and (6) damages for breach in regard to accepted goods  Section 672.714. We find that the Parsons were not foreclosed from pursuing other UCC remedies. Therefore the trial court erred in ruling that the warranty notice provision was effective to limit the Parsons' remedies to repair or replacement of parts.
Had the seller's disclaimer been effective to create an exclusive remedy, the next inquiry would be whether that exclusive remedy had failed of its essential purpose. White & Summers point out that "its" in the 2-719(2) clause refers to "the application of an agreement to novel circumstances not contemplated by the parties." White & Summers, at § 12-10. Such novel circumstances were scrutinized by the court in Tampa Farm Service, Inc. v. Cargill, Inc., 356 So.2d 347 (Fla. 2d DCA 1978), where the court said that although the UCC remedies may be modified by contract, "even when the parties agree upon a particular remedy, resort can be had to the additional remedies of the UCC if the agreed-upon remedy fails of its `essential purpose.'" The court examined cases dealing with auto purchases as representative of warranties which failed of their essential purpose. In the auto cases, as in this case, the buyer's remedy was limited to repair or replacement of defective parts. After purchase, the buyer typically experienced repeated problems, which the dealer  after repeated attempts  had been unable to repair. "In these circumstances, courts have ruled that buyer's remedies were not limited to those in the contract, and that resort could be had to the remedies of the UCC." (citations omitted). Id., at 350. In Orange Motors of Coral Gables v. Dade Co. Dairies, 258 So.2d 319 (Fla. 3rd DCA 1972), the buyer's problems were analogous to those of the Parsons. The evidence demonstrated that a new Jaquar was in the shop for approximately half of the three months of the buyer's ownership. The seller argued, as does Motor Homes here, that the written warranty provided the only available remedy. The court disagreed and held "the seller does not have an unlimited time for the performance of the obligation to replace and repair parts."
The Parsons stated their purpose in buying the motor home was for family trips, and they intended for the unit to provide both transportation as well as a place to live, cook, and eat. There is evidence in the record that the Parsons' motor home failed of its essential purpose with regard to providing a livable environment for the Parsons family when they were away from home. There is evidence to support the position that on each trip, the Parsons encountered difficulties of a degree that went beyond simple inconvenience. In addition, there is evidence that the efforts of Motor Homes to repair the defects in the motor home were unsuccessful. On this evidence we find that the Parsons' remedies are not limited to those in the contract, since the provision for repair or replacement had failed of its essential purpose thus recourse may be had to the remedies of the UCC.[7]
Finally, even had we found the trial court was correct in holding that the warranty notice effectively limited the Parsons' remedy to the manufacturer's warranty, *1293 point four requires reversal because the Magnuson-Moss Act is controlling. Section 2308 of the act provides in relevant part:
(a) No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

.....
(c) A disclaimer, modification or limitation made in violation of this section shall be ineffective for purposes of this title and State law. 15 U.S.C. § 2308 (1982). (emphasis supplied).
This record reflects that Motor Homes, the "supplier", delivered a written limited warranty to the Parsons, the "consumers," with respect to the motor home, the "consumer product." In addition, at the time of sale, the Parsons purchased a service contract  an extended warranty  from Motor Homes which applied to the "consumer product." Thus, this transaction falls within the ambit of 15 U.S.C.A. § 2308(a) (1982). Subsection (c) of the act provides that a "disclaimer, modification or limitation made in violation of this section shall be ineffective for purposes of this title and State law." It is clear that the federal legislation expressly proscribes the limitation of remedy argued for by Motor Homes, i.e., the seller purportedly limited the buyer's remedies to the manufacturer's warranty.
As fifth point on appeal, the Parsons allege the trial court erred in denying their claim for revocation of acceptance. An action for revocation is governed by Section 672.608, Florida Statutes.[8] The trial court's denial of revocation of acceptance was premised on a finding of no substantial impairment of value pursuant to Section 672-608(1), which provides 
The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been reasonably cured; or
(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
Since a trial court's findings of facts are clothed with a presumption of validity, an appellate court will not disturb those findings even if it might have reached a different conclusion, unless the record demonstrates a lack of substantial evidentiary support for those findings. Herzog v. Herzog, 346 So.2d 56 (Fla. 1977). There is in this record sufficient evidence for the judge's finding of lack of impairment of value. Therefore, the trial court's findings in support of the denial of revocation will not be disturbed on this appeal.
We reverse points one and four, and affirm points two, three, and five of this appeal. By this decision we hold that a party should not be required to make an election of remedies at pre-trial conference, for such a requirement places a party in *1294 the position of having to choose between the greater remedy (revocation) and the possibility of no remedy at all, should a buyer fail on his revocation claim. It is not inconsistent to seek revocation and damages in a suit for breach of contract.
Affirmed in part, reversed in part and remanded for new trial consistent with this opinion.
WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] Two of the documents concerned repairs performed on the motor home two months after appellants' revocation of acceptance.
[2] In Cordell the court held:

"the learned judge did err upon entering the order here appealed prior to discovery, prior to defendant's answer, prior to pretrial conference and prior to the taking of evidence." Id. 224.
[3] § 90.107, Fla. Stat. (1981) provides:

When evidence that is admissible as to one party or for one purpose, but inadmissible as to another party or for another purpose, is admitted, the court, upon request, shall restrict such evidence to its proper scope and so inform the jury at the time it is admitted.
[4] In Butler v. State, 94 Fla. 163, 167, 113 So. 699, 701 (1927), the court held that:

"technical error, committed by a trial court in the reception or rejection of evidence does not necessarily constitute harmful error. It is injury resulting from error that warrants appellate court in reversing a judgment of the trial court." Accord: Prince v. Aucilla River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931).
[5] § 672.719, Fla. Stat. (1981), provides:

672.719 Contractual modification or limitation of remedy. 
(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:
(a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code.
(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
[6] See also: Ford Motor Co. v. Reid, 250 Ark. 176, 465 S.W.2d 80 (1971).
[7] § 672.714, Fla. Stat. (1981), provides:

672.714 Buyer's damages for breach in regard to accepted goods. 
(1) Where the buyer has accepted goods and given notification (s. 672.607(3)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
(3) In a proper case any incidental and consequential damages under the next section may also be recovered.
[8] § 672.608, Fla. Stat. (1981), provides:

672.608 Revocation of acceptance in whole or in part. 
(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.