**LENNAR HOMES, INC.**

v.

**MASONITE CORPORATION, et al.**

**No. Civ.A. MDL 1098.**

United States District Court,
E.D. Louisiana.

Nov. 9, 1998.

Order Denying Reconsideration
Dec. 17, 1998.

Steven W. Usdin, Phillip A. Wittmann, Stephanie D. Shuler, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Micael E. Berg, Matthew T. Regan, Kirkland & Ellis, Chicago, IL, Richard C. Stanley, Stanley & Flanagan, L.L.C., New Orleans, LA, for Masonite Corp.

Cameron Waddell, LeBlanc, Maples & Waddell, LLC, Baton Rouge, LA, Donni Elizabeth Young, Ness, Motley, Loadholt, Richardson & Poole, New Orleans, LA, for Philip Cuccia.

Patricia Howard, Washington, DC, pro se.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is plaintiff Lennar Homes' Motion for Reconsideration. Lennar seeks reconsideration of the summary judgment granted in favor of Masonite with respect to the claims for breach of express warranty and subrogation. For the reasons that follow, the Motion is GRANTED.

### Background

The facts have been previously stated. In July 1996, Lennar filed this suit against Masonite, alleging claims for (1) breach of express warranty, (2) breach of common law implied warranty, (3) breach of statutory implied warranty of merchantability, (4) breach of statutory implied warranty of fitness for a particular purpose, (5) breach of statutory express warranty, (6) common law indemnity, and (7) equitable subrogation.

By Order dated September 16, 1998, this Court granted summary judgment in favor of Masonite on all counts, save the indemnity claim. Lennar now moves for reconsideration on the claims for breach of express warranty and subrogation.

### Law and Application

Federal Rule of Civil Procedure 59(e) provides that a party may move to alter or amend a judgment in order to correct manifest errors of law or fact.[1] *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir.1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (en banc). The Court exercises considerable discretion in deciding such a motion, balancing "two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir.1993).

The Court dismissed Lennar's claim for breach of an express written warranty based on the homeowner's admitted non-reliance on the Masonite warranty. The Court concludes, however, that reliance is not necessary to enforce a written warranty under Florida law. Accordingly, the earlier summary judgment must be amended.

#### 1. Reliance

Although at first blush it appears that reliance is required to recover for breach of an express warranty, *Spolski Gen. Contractor, Inc. v. Jett–Aire Corp. Aviation Management*, 637 So.2d 968 (Fla.Dist.Ct.App. 1995); *Weimar v. Yacht Club Point Estates*, 223 So.2d 100, 104 (Fla.Dist.Ct.App.1969), the reliance element must be confined under Florida law to cases which do not involve express written warranties. In both *Spolski* and *Weimar*, reliance was discussed only in the context of the statutory scenario for transforming a seller's affirmations and representations into a warranty; these cases did not involve written warranties.[2]

The parties cite no cases, nor has the Court uncovered any, in which Florida courts have grappled with the question of reliance

---

1. The Court issued its Order granting summary judgment on September 16, 1998. Although this motion to alter or amend was filed more than ten days after entry of judgment, the Court will treat it as a Rule 59 motion, pursuant to the Court's Order of October 5, 1998.

2. Similarly, the cases from which the *Weimar* court extracts the reliance element did not involve express written warranties.

in the context of an express written warranty.[3] Nevertheless, the Court does not aim to divine the contours of Florida law, but, rather, modestly endeavors to predict how Florida courts would resolve this question. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 381–82 (5th Cir.1998). Although other jurisdictions are divided on the issue, the Court discerns certain instructive themes that serve as guideposts in Florida's terra incognita.

■■■■ Under Florida law, a written warranty is treated as a contract between buyer and seller. *Council Bros., Inc. v. Ray Burner Co.*, 473 F.2d 400, 406 (5th Cir.1973); *see also Brennan v. Dow Chem. Co.*, 613 So.2d 131, 132 (Fla.Dist.Ct.App.1993) (noting that a warranty is "a voluntarily undertaken contractual commitment") (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 526, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). As beneficiaries of the warranty,[4] the homeowners need not prove reliance to sustain a breach of contract claim. *See Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla.Dist.Ct. App.1994) (describing elements of breach of contract claim); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1031 (Fla.Dist.Ct.App.1994) (same, in context of third-party beneficiary).

Requiring reliance for claiming breach of an express written warranty would dissolve Florida's distinction between the tort of misrepresentation and breach of contract. *See Gilchrist Timber Company v. ITT Rayonier, Inc.*, 696 So.2d 334, 337 (Fla.1997) (including reliance among elements of tort of negligent misrepresentation); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla.1996). ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."). Although tort-contract distinctions are at times doctrinally elusive, the Court ought not import tort principles into the law of contract, blurring the line between tort principles and breach of contract. *See Ainger v. Michigan Gen. Corp.*, 476 F.Supp. 1209, 1224–25 (S.D.N.Y.1979) ("Transporting tort principles into contract law seems analytically unsound. If a party to a contract purchases a promise, he should not be denied damages for breach on the grounds that it was unwise or unreasonable for him to do so."), *aff'd*, 632 F.2d 1025 (2d Cir.1980).

To be sure, some courts, including Florida courts (*Spolski, Weimar*), have employed the reliance element in express warranty cases. In these contexts, however, the reliance question mostly relates to the first element of proof in any contract claim—existence of a contract; reliance infers acceptance of the seller's affirmations, forming the basis of the contractual bargain.

Nevertheless, reliance is unnecessary to demonstrate a binding contract if the warranty is memorialized in writing, as the case here. Express warranties are created when any affirmation or promise relating to the goods becomes part of the basis of the bargain; "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." Fla.Stat. § 672.313(1) & comment 3 (U.C.C. § 2–313). As one court shrewdly observed, "[w]here the warranty is proved and especially where it is expressly stated in a signed writing[,] the promisor should be allowed to disclaim 'the bargain of the parties in fact as found in their language' only in an extraordinary case...." *Ainger*, 476 F.Supp. at 1225 (quoting N.Y.U.C.C. § 1–201(3)). Accordingly, "[t]he warranty is as much a part of the contract as any other part, and the right to damages on the breach depends on nothing more than the breach of the warranty." *Glacier Gen. Assurance Co. v. Casualty Indem. Exchange*, 435 F.Supp. 855, 860 (D.Mont. 1977).

Both the Eighth Circuit, applying Minnesota law, and the Tenth Circuit, applying

---

3. The Eleventh Circuit considered the issue with respect to jury instructions, but did not have occasion to consider Florida law in light of a New York choice of law provision. *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1470 (11th Cir. 1989).

4. The Court ruled on summary judgment that the express limited warranty runs in favor of the homeowners.

Kansas law, have found reliance essential to recovery under an express written warranty. *Hendricks v. Callahan*, 972 F.2d 190 (8th Cir.1992); *Land v. Roper Corp.*, 531 F.2d 445 (10th Cir.1976). Both cases, however, involved the sale of stock—a transaction beyond the reach of the U.C.C.—and are distinguishable from the present case involving a sale of goods. Indeed, this distinction is supported by considering a pre-*Land* decision in which the Kansas Supreme Court discarded the reliance element in a sale-of-goods case governed by the U.C.C. *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 521 P.2d 281 (Kan.1974).

Yet other cases have viewed reliance as a question of waiver. Consumers knowing before purchase that facts supporting a warranty are not true might not be entitled to damages; because they did not rely on the warranty to their detriment, they have waived the breach. *Galli v. Metz*, 973 F.2d 145, 151 (2d Cir.1992); *Allegheny & Western Energy Corp. v. Columbia Gas Sys., Inc.*, 1986 WL 13360, at *6 (S.D.W.Va. June 30, 1986).

By contrast, the homeowners' non-reliance cannot be equated with a knowing waiver of their rights. They did not know that the Masonite siding was allegedly defective. Furthermore, injecting reliance into this recovery model would defeat countless claims by consumers who are not well-versed in the "intricacies of the law of sale," clashing with the public policy favoring liberalized consumers' recovery rights. *See Schuessler v. Coca–Cola Bottling Co. of Miami*, 279 So.2d 901, 904 (Fla.Dist.Ct.App.1973). Interposing a reliance requirement, no doubt, would render consumer warranties illusory.

The Court imagines that few consumers rely, in the strict sense, on warranties when making purchases. Rather, consumers' reliance materializes only at the moment of disappointed expectations. When an appliance breaks, for instance, one might peruse the owner's manual to discover a little-known warranty buried in the fine print. What matters most is the fact that the buyer has purchased the seller's promises as part of the bargain, *see Ainger*, 476 F.Supp. at 1225, and now seeks to invoke the promised terms

when things have gone awry. Thus, Masonite cannot escape plain contractual terms by arguing that unsophisticated home buyers did not rely on their written promises. *See Giuffrida v. American Family Brands, Inc.*, nos. 96–7062, 96–7256, 1998 WL 196402, at *4 (E.D.Pa. April 23, 1998).

### 2. *Assignment/ Subrogation*

Masonite has not challenged the homeowner's assignment of claims to Lennar. Thus, in light of a valid assignment of their warranty claims, there is no need to delve into the law of equitable subrogation. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. George*, 516 So.2d 1068, 1069 (Fla.Dist.Ct. App.1987); *see also Dixie Nat'l Bank v. Employers Commercial Union Ins. Co.*, 463 So.2d 1147, 1151 (Fla.1985) (noting that conventional subrogation, as opposed to legal/equitable subrogation, depends upon a lawful contract, such as an assignment).

■ The assignment adds nothing to an equitable subrogation claim. *Dixie Nat'l Bank*, 463 So.2d at 1152. Under either form of subrogation, Lennar may succeed only to those rights which the homeowners had against Masonite. *Casualty Indemnity Exchange v. Penrod Bros., Inc.*, 632 So.2d 1046, 1047 (Fla.Dist.Ct.App.1993). Furthermore, Lennar must exercise those rights under the same conditions and limitations as were binding on the homeowners. *Blue Cross/ Blue Shield United v. Inverrary Hotel Corp.*, 579 So.2d 863, 864 (Fla.Dist.Ct.App.1991).

### 3. *Condition Precedent*

■ The written warranty is not without limits. As a condition precedent to recovery, the siding must have been "installed according to the manufacturer's published application instructions." To the extent that Lennar admits that some of the siding was not properly installed at least six inches from the grade, the homeowners cannot recover under the warranty. The factfinder must determine the extent to which the product was incorrectly installed, thereby negating the warranty in those instances.

### 4. *Limitation of Remedies*

■ The damages available under the express written warranty are expressly limited to twice the amount of the owner's original purchase price.[5] Limitation of damages is expressly permitted by statute unless it is unconscionable. Fla.Stat. §§ 672.316(4), 672.719(3); *see also Action Orthopedics, Inc. v. Techmedica, Inc.*, 759 F.Supp. 1566, 1569 (M.D.Fla.1991). Recovery can be no more than provided for in the agreement. *Hi Neighbor Enters., Inc. v. Burroughs Corp.*, 492 F.Supp. 823, 827 (N.D.Fla.1980).

■ Although language excluding implied warranties of merchantability and fitness must be "conspicuous," Fla.Stat. § 672.316(2), there is no such requirement for a limitation on damages in an express written warranty. *See* Fla.Stat. 672.719. In any case, the Court finds as a matter of law that the boldface captions, in all capital letters, expressly limiting warranties, are conspicuous. *Monsanto Agricultural Prods. Co. v. Edenfield*, 426 So.2d 574, 578 (Fla.Dist.Ct. App.1982).

■ Lennar offers no support for its contention that the limited warranty fails of its essential purpose. *See* Fla.Stat. § 672.719(2). The "essential purpose" clause refers to "the application of an agreement to novel circumstances not contemplated by the parties." *Parsons v. Motor Homes of Am., Inc.*, 465 So.2d 1285, 1292 (Fla.Dist.Ct.App. 1985) (citation omitted). This exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use. *See id.* Masonite's written warranty contemplates that the siding could fail, and provides a remedy for its replacement. Unquestionably the homeowners have been inconvenienced; but there is no evidence that the limited warranty cannot provide an adequate remedy under the circumstances.

■ Lennar also contends that the limited warranty is unconscionable, thereby unenforceable, because Masonite intentionally shipped a product which it knew was defective. Lennar has not waived this claim. Unconscionability is an affirmative defense for which Lennar must carry the burden of proof. *Earman Oil Co. v. Burroughs Corp.*, 625 F.2d 1291, 1299 (5th Cir.1980). Nevertheless, Lennar's obligation to raise this issue was not triggered until Masonite raised its affirmative defense for limitation of remedies. *See* Fed.R.Civ.P. 7.

■ The question of conscionability is one for the Court. *Monsanto*, 426 So.2d at 579; *Fotomat Corp. of Florida v. Chanda*, 464 So.2d 626, 628 (Fla.Dist.Ct.App.1985). The Court agrees that shipping a product with a known latent defect may infect a limitation with unconscionability. *See Monsanto*, 426 So.2d at 579 (citing *Majors v. Kalo Lab., Inc.*, 407 F.Supp. 20 (M.D.Ala.1975)). This limitation is not prima facie unconscionable, but Lennar has sufficiently raised material issues of fact regarding Masonite's knowledge of defects to preclude summary judgment. *See Radiation Tech., Inc. v. Ware Constr. Co.*, 445 So.2d 329, 332 (Fla. 1983). The factual record must be developed further before the Court can determine whether the limitation rises to the level of unconscionability.

### 5. *Certainty of Damages*

■ While damages "must be capable of proof to a reasonable certainty and not left open to speculation or conjecture," *Royster Co. v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir.1984), such damages may be estimated. *Nezelek, Inc. v. Southern Bell Tel. and Tel. Co.*, 383 So.2d 979, 981 (Fla. Dist.Ct.App.1980).[6] Lennar has prepared a detailed cost summary outlining various repairs, extending beyond damages possibly resulting from deteriorating siding. Although Lennar's expert concedes that the

---

**5.** Although Lennar has not offered proof of the purchase price, such evidence can be introduced at trial.

**6.** Lennar notes that the proper measure of damages in a construction defect case is the cost of correcting the defects. *Temple Beth Sholom and Jewish Ctr., Inc. v. Thyne Constr. Corp.*, 399 So.2d 525, 526 (Fla.Dist.Ct.App.1981). This case, however, involves a product defect, not a construction contract. Masonite was not responsible for building the homes.

amounts attributed to Masonite siding are a product of his "guesswork," the Court does not believe that the amounts are not capable of proof. The law does not require exactness, only reasonableness. *R.A. Jones & Sons, Inc. v. Holman,* 470 So.2d 60, 70 (Fla. Dist.Ct.App.1985).

Lennar may demonstrate at trial that its damages are directly attributable to the siding's deterioration and Masonite's breach of its warranty. *See id.* Lennar's expert, Sherman Kronick, has testified that he developed his damages estimates based on his own observations and conversations with engineers and workers a the construction site. Masonite will be entitled to cross-examine Lennar's witnesses, and present rebuttal evidence of their own, to refute the cost data. *Centex–Rooney Constr. Co., Inc. v. Martin County,* 706 So.2d 20, 28 (Fla.Dist.Ct.App. 1997). Although Lennar's cost summary is not a model of clarity and preciseness, the factfinder should be able to identify those costs associated with the siding's failure to a reasonable degree of certainty.

### Conclusion

For the foregoing reasons, defendant's Motion for Reconsideration is GRANTED.

IT IS ORDERED that plaintiff's claim for breach of express warranty may proceed to the extent defined in this Court's Order and Reasons.

### ORDER AND REASONS

Before the Court is plaintiff Lennar Homes' Motion for Clarification and/or Reconsideration of this Court's November 10, 1998 Order and/or to Alter or Amend Judgment. In short, Lennar seeks reconsideration of the motion for reconsideration previously granted in part in its favor. For the reasons that follow, the Motion is DENIED.

### Background

The facts are well known. In July 1996, Lennar Homes filed suit against Masonite complaining that the Masonite-brand exterior hardboard siding installed on Lennar-built homes was unexpectedly deteriorating. By Order dated September 16, 1998, this Court granted summary judgment in favor of Masonite on all counts, save the indemnity claim. On November 10, 1998, the Court granted Lennar's motion for reconsideration, amending the ruling to reinstate the homeowners' claim for breach of an express warranty, subrogating Lennar to that claim by way of an express assignment.

Dissatisfied still, Lennar returns with yet another motion for reconsideration seeking to amend the order granting their last motion for reconsideration. By chance that repetition will reveal the inevitable lesson, the request for relief is denied—again.

### Law and Application

Lennar's motion betrays counsels' extravagant—and persistent—aim: to manufacture a model for relief when the law plainly provides none. The motion must be denied.

No doubt, the many motions, oppositions, replies, and surreplies filed in this matter have bred confusion regarding the contours of Lennar's recovery rights. To leave no room for doubt, the Court will distill its prior rulings into a concise recapitulation: Lennar may proceed under two theories. First, Lennar can recover in implied indemnity for reasonable settlements paid to the homeowners, but only insofar as it proves that the siding's deterioration can be attributed solely to a product defect, without any fault on Lennar's part. Second, Lennar may pursue assigned claims under Masonite's express written warranty, subject to all express conditions and limitations of damages; Lennar may avoid the limitation of damages if it proves unconscionability—a heavy burden.

Of course, as the parties know, Federal Rule of Civil Procedure 59(e) entitles a party to move to alter or amend a judgment in order to correct manifest errors of law or fact. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 174 (5th Cir.1990), abrogated on other grounds by *Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir.1994) (en banc). The Court exercises considerable discretion in deciding such a motion, balancing "two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 355 (5th Cir.1993). The Court recognizes no manifest errors in this instance.

Counsel are warned that this parade of motions—renewing feeble arguments that have been raised, rejected, reconsidered, and rejected again—must be stopped, lest zealous advocacy be mistaken for contemptuous disregard for the Court's prior rulings. The proper route for expressing dissatisfaction with the Court's rulings is to file a notice of appeal; a motion for reconsideration is not a substitute for a timely appeal. *Latham v. Wells Fargo Bank,* 987 F.2d 1199 (5th Cir. 1993).

### A.

■ Lennar makes several arguments suggesting that Masonite's limitation of damages contained in its express written warranty is unenforceable. First, Lennar argues that Masonite's limited remedy should be cumulated with all other remedies available under the U.C.C. because Masonite failed to use the "magic words 'exclusive' or 'sole' remedy." [1] The Court does not agree.

The Court has ruled that the language of the warranty limitation is conspicuous and therefore effective. The limitation quite plainly specifies the remedy for a breach and no more need be said; the exclusivity of this damages measure is unmistakable. Although one Florida court has suggested that the warranty must include "magic words" to make the remedy exclusive, *Parsons v. Motor Homes of Am., Inc.,* 465 So.2d 1285, 1291 (Fla.Dist.Ct.App.1985), the Court is not persuaded that the words "exclusive" or "sole" are critical.[2]

The word "limited" has the same effect as the terms "exclusive" or "sole"; in either case the language clearly expresses the manufacturer's intent to circumscribe the available remedies. The U.C.C. requires only that the exclusivity be clearly expressed, not that "magic words" be employed. *See* Fla. Stat. § 672.719 Official Comment ("[I]f the parties intend for a written warranty to prescribe an exclusive remedy, this must be clearly expressed."). Stating that the buyer's remedy is "limited to" a certain measure of damages is merely the converse of saying that the remedy is exclusive. *Council Bros. v. Ray Burner Co.,* 473 F.2d 400, 406 n. 6 (5th Cir.1973).

The cases on which Lennar relies are not to the contrary. In *Council Bros.,* the court found that the written warranty did not specify that the prescribed remedies were exclusive of other remedies. Similarly, in *City of Jacksonville v. Orr Constr. Co.,* 427 So.2d 237 (Fla.Dist.Ct.App.1983), the purchase order allowed the buyer to seek the replacement of defective goods, but it did not limit recoverable damages. In contrast, Masonite's warranty unambiguously limits damages to a maximum of twice the purchase price; there is no basis to deviate from the unambiguous contractual term. Finally, *Parsons,* 465 So.2d 1285, is inapposite. There, the court merely concluded that a manufacturer's limited warranty did not foreclose the buyer's warranty claims against the direct seller.

■ Although the Court concludes that the limitation of damages in the express written warranty is effective,[3] the limitation does

---

**1.** By insisting that manufacturer's include "magic words," Lennar perversely suggests that Masonite's warranty does not contain *enough* boilerplate language.

**2.** Where state law provides the rule of decision, this court is bound to apply the law as interpreted by the state's supreme court. *FDIC v. Abraham,* 137 F.3d 264, 267–68 (5th Cir.1998). The parties did not cite, nor did the Court uncover, any Florida Supreme Court cases discussing the requirement of "magic words" to make the limitation effective. "When the state's court of last resort has yet to speak to an issue, as in this case, our task is to determine, to the best of our ability, how that court would rule if the issue were before it." *Ladue v. Chevron, U.S.A., Inc.,* 920 F.2d 272, 274 (5th Cir.1991) (citing *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S.

456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)). While not controlling, intermediate appellate courts' decisions may act as a guide to this Court's decision-making process. *See FDIC v. Abraham,* 137 F.3d at 268 & n. 14. The Court simply doubts that the supreme court would not interpret "limited" to have the same effect as the boilerplate terms suggested by the *Parsons* court.

**3.** Lennar may escape the limitation if it can prove unconscionability. Masonite's arguments to the contrary have not been properly presented in a motion for summary judgment.

In any case, it is no answer for Masonite to say that it could have chosen not to provide any written warranty. The siding's price undoubtedly reflects that the homeowners paid a premium for the benefit of a warranty.

not foreclose resort to other models of recovery. Masonite rightfully concedes that Lennar may pursue its indemnity claim. Although the limitation does not exclude resort to other express or implied warranties, the Court previously has ruled that all remaining warranty claims fail as a matter of law.

### B.

There is no merit to Lennar's renewed assertion that the limited warranty fails of its essential purpose. The belated affidavits by Sherman Kronick and Joseph Lstiburek, even if properly considered on a motion for reconsideration, cannot rescue Lennar's claim. Whether or not the product can be *repaired* after its failure is irrelevant if it could be *replaced*. Similarly, Lennar's collateral estoppel argument, improperly raised for the first time on this motion for reconsideration, is without merit. Whether the product completely fails in its intended use is not the operative question; the warranty's alleged failure in its essential purpose turns on whether or not the limited damages remedy is adequate in case the product fails. The warranty does not fail simply because the product has failed. It is undisputed that Lennar has successfully replaced Masonite siding that has prematurely deteriorated; there has been no complaint regarding the performance of any such replacements. Lennar has made no showing that the limited

warranty's provision of twice the purchase price is insufficient to replace a defective product. Curiously, Lennar contends that it is not required to provide facts in support of its claim for the warranty's failure of its essential purpose. Quite to the contrary, the failure to adduce facts supporting a claim is a proper ground for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992).

Masonite correctly notes that the mere fact that some consumers will not be one-hundred percent compensated for their asserted losses is contemplated by the legal principles permitting limited warranties. There is no evidence that Lennar and the homeowners have been deprived of any substantial benefits of the warranty bargain; the written warranty contemplates that the siding may fail, and it provides a remedy for its replacement. Thus, the Court reaffirms its ruling as a matter of law that the limited warranty does not fail of its essential purpose.[4]

### C.

Finally, Lennar once again renews its equitable subrogation claim. As the Court previously ruled, Lennar may pursue the homeowners' claims under the terms of the

---

Masonite also suggests that the warranty cannot be unconscionable because it exacts a substantial penalty on Masonite if the product fails. Thus, as a rational capitalist, Masonite has a strong incentive not to ship defective products. Courts, of course, do not sit to judge the prudence of business decisions. Nevertheless, despite prospective penalties, conceivably Masonite calculated that it is unlikely many would sue to enforce the warranty, particularly in light of the limitation of damages provision. Indeed, Masonite's vigorous defense in this matter demonstrates the difficulty end users face to recover damages.

The fact that only a small percentage of products actually failed may suggest the absence of a latent defect; the prospect of substantial warranty penalties also might suggest that Masonite did not knowingly ship a defective product for fear of triggering warranty payments should the product fail. Ultimately, the jury must determine whether Masonite knowingly shipped a product with a latent defect. If the answer is affirmative, the Court may find as a matter of law that the limitation of damages was unconscionable.

4. The Court is not impressed by Lennar's vain assertions that the Court cannot decide this question as a matter of law. Lennar argues, "While the Order expressly provides that unconscionability is a question for the jury, the Order does not apply this same standard to the question of whether Masonite's warranty fails of its essential purpose. Neither does the Order state that the ruling on this question is made as a matter of law, as it did for the issue of conspicuousness."

In no uncertain terms, the Court has stated that unconscionability is a question for the Court; thus, Lennar's syllogism suffers from a faulty premise based on an egregious misreading of the previous Order. Furthermore, Lennar's bald statement that the Court "cannot" rule as a matter of law grossly misunderstands the purpose—and power—of summary judgment. Finally, Lennar's pedantic focus on the absence of the magic words "as a matter of law" does not alter the ruling. These sophomoric arguments are weak at best.

express written warranty in virtue of an express assignment. The assignment of rights offers Lennar no more and no less than could be obtained by the vehicle of equitable subrogation.

Lennar's view of equitable subrogation is but a caricature of the law's settled domain. The Court need only repeat its previous statement on the law: "The use of 'equity' touches upon the relationship between the defendant and plaintiff as subrogee; it is not an unchecked principle of conscience that allows recovery whenever it seems fair or right to make the defendant pay for the subrogor's losses that defendant is not legally obligated to pay." *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F.Supp.2d 593, 607 (E.D.La.1998).

■ Equitable subrogation would allow Lennar to succeed to no greater rights than those the homeowners would have had against Masonite. *Id.* at 606 (citing cases). Thus, Lennar may seek no more than the homeowners' express warranty claim, subject to precisely the same limitation of damages provision as the homeowners. An assignment of the warranty claims serves the same end—and faces the same limitations—as equitable subrogation. Furthermore, subrogation does not entitle Lennar to its attorneys' fees; such fees are available only by contract or statute. *Green v. Sun Harbor Homeowners' Ass'n, Inc.*, No. 89911, —— So.2d ——, ——, 1998 WL 558989, at *2 (Fla. Sept. 4, 1998); *Plapinger v. Eastern States Properties Realty Corp.*, 716 So.2d 315, 317 (Fla. Dist.Ct.App.1998).

### Conclusion

For the foregoing reasons, plaintiff's Motion for Reconsideration is DENIED.