[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15600
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 3, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-80039-CV-DMM

JET SALES OF STUART, LLC, a Delaware
Limited Liability corporation,

Plaintiff-Appellant-
Cross-Appellee,

versus

JET CONNECTION TRAVEL, GMBH,
a German (foreign) corporation,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 3, 2007)**

Before WILSON, PRYOR, and COX, Circuit Judges.

PER CURIAM:

# I.  INTRODUCTION

Jet Sales of Stuart, LLC ("Jet Sales") appeals the district court's final judgment granting Jet Connection Travel ("Jet Connection") summary judgment and denying Jet Sales summary judgment.  The district court also ruled that neither Jet Sales nor Jet Connection were "defaulting parties" for purposes of awarding attorney's fees. Both Jet Sales and Jet Connection appeal on this issue.

# II.  FACTS

Jet Sales and Jet Connection entered into a Purchase and Sale Agreement ("Agreement") dated August 8, 2005, with regard to a 1998 Learjet 60 ("Aircraft"). (R.2-90 at 2.)  The purchase price was $6,700,000.  (R.2-90 at 1.)  Jet Sales then entered into a contract to sell the Aircraft to Airitout, LLC for $7,000,000.  (*Id*.) The Agreement required Jet Sales to deliver a $200,000 down payment to an escrow agent, with other sums due to be paid at closing.  (R.2-90 at 2.)  Jet Sales paid the $200,000. (*Id*.)

On September 22, 2005, Jet Connection informed Jet Sales that it was having a problem with GE Capital, one of the lienholders on the Aircraft, and that it might have difficulty closing the sale.  (R.2-50 at 2-3.)  When Jet Connection could not reach an accord with GE Capital, it notified Jet Sales that the Agreement was terminated. (R.2-50 at 3.) Jet Connection returned the down payment, along with the

$31,000 that Jet Sales had advanced to Bombardier Learjet for inspections and repairs. (*Id.*)

## III. DISCUSSION

The court found that "Article II(C) appears to provide a specifically enumerated remedy for Plaintiff in the event of Defendant's non-delivery of the Aircraft. In the event of breach, Plaintiff was permitted to terminate all obligations under the Agreement, and Defendant had to return the deposit as well as pay the inspection costs." (R.2-90 at 6.) Jet Sales contends that Article II(C) provides an optional remedy, while Article VII, paragraph K, allows Jet Sales to select any remedy. Jet Connection argues that Article II(C) limits Jet Sales to the return of its down payment and reimbursement of its inspection costs.

Article VII, paragraph K, states, "The Parties hereto shall have all rights, remedies, and recourses granted herein . . . ." (R.2-54 at 35.) Such general language requires the parties to look elsewhere to ascertain what specific remedies exist. "[G]eneral language of a contract must yield to specific language which deals with the matter at issue . . . ." *Genunzio v. Genunzio*, 598 So. 2d 129, 132 (Fla. 2nd DCA 1992). Article II(C) is more specific, and we agree with the district court that it limits the remedy available to Jet Sales in this case.

3

Jet Sales argues that a remedy is optional under Florida Statutes Section 672.719(1)(b) unless the Agreement contains specific language that the remedy is exclusive. Section 672.719(1)(b) states, "Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." In this case, Jet Sales contends that Article II(C) does not contain such specific language. Moreover, Jet Sales claims that the court disregarded *Parsons v. Motor Homes of America, Inc.*, 465 So. 2d 1285 (Fla. 1st DCA 1985).

The district court concluded, relying on *Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396 (D. La. 1998), that while the term "sole remedy" is only used with reference to the Seller's stated remedy, the parties detailed a remedy in Article II(C) and stated that upon compliance "the Parties shall have no other or further liability to each other." (R.2-90 at 9.) This language clearly expresses the parties' intent to have the limited remedies of Article II(C) serve as the sole remedies.[1] *See Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla 4th DCA 2006).

Both parties requested an award of attorney's fees pursuant to Article VII(M) of the Agreement. But the district court declined, concluding:

---

[1] Jet Sales also seeks reimbursement of $6,710.57 in additional "inspection costs." But Jet Sales' own evidence (R.2-72 at 62) showed that the $6,710.57 was unrelated to the Bombardier inspection costs contemplated in Article II (B).

4

The language of the Agreement calls for an award of attorney's fees against the "Defaulting Party." Per the Court's findings, there was no "Defaulting Party." While Defendant did not deliver the Aircraft as required, it adhered to its obligations under the Agreement in the event of breach, as the Court finds that the limitation of remedy provision only required Defendant to return Plaintiff's deposit and pay for the Aircraft's inspection costs. Defendant complied with these obligations before this suit was filed. Neither is Plaintiff a "Defaulting Party," as Jet Sales did not fail to perform any of its obligations under the Agreement . . . . (R.2-90 at 10-11.)

Jet Sales argues that if the case is reversed on the merits, the court's refusal to award it attorney's fees should be reversed. Jet Connection contends that the court abused its discretion in failing to award it fees since it was the "prevailing party" and hence entitled to attorney's fees.

"An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990). Article VII(M) of the Agreement provides:

In the event a party (the "Non-Defaulting Party") is required to employ legal counsel or to incur other expenses to enforce any obligation of the other party hereunder (the "Defaulting Party"), or to defend against any claim, demand, action or proceeding by reason of the Defaulting Party's failure to perform any obligation imposed by this Agreement, and provided that legal action is filed by or against the Defaulting Party and such action or settlement thereof establishes the Defaulting Party's default hereunder, the Non-Defaulting Party shall be entitled to recover

5

from the Defaulting Party the amount of all reasonable attorney's fees of such counsel and all other expenses incurred in enforcing such obligation or in defending against such claim, demand, action or proceeding. (R.2-50 at 26.)

Agreements providing for the award of attorney's fees must be clear and specific. *Vill. 45 Partners v. Racetrac Petroleum, Inc.*, 831 So. 2d 758, 760 (Fla. 4th DCA 2002). Since we do not reverse, Jet Sales' argument fails. As to Jet Connection's argument, there is no support in Article VII(M) that a "prevailing party" should recover attorney's fees. "[A]ttorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery." *Bidon v. Dep't of Prof'l Regulation*, 596 So. 2d 450, 452 (Fla. 1992). Jet Connection never raised the argument it now makes concerning Section 57.105(7) of the Florida Statutes in the district court. (R.2-87 at 11-12.) Therefore, we do not consider this argument.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

6